```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA

                     Alexandria Division

KEITH BILLINGSLEY,            )
                             )
     Petitioner,             )
                             )
          v.                 )    CRIMINAL NO. 1:03cr395-3
                             )    CIVIL NO. 1:07cv1185
UNITED STATES OF AMERICA,     )
                             )
     Respondent.             )
```

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  For the following reasons, the Court will deny the motion.

### I. Background

On May 6, 2004, Petitioner Keith Billingsley was convicted of conspiracy to distribute 50 grams or more of crack cocaine within 1000 feet of a school, a playground, or public housing, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860(a). He was sentenced to 324 months of incarceration on February 25, 2005.  Petitioner appealed his conviction to the United States Court of Appeals for the Fourth Circuit, which affirmed it on July 20, 2006.  The Supreme Court of the United States denied Petitioner's writ of certiorari on November 27, 2006.

1

On November 26, 2007, Petitioner filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (the "Motion"), raising eight separate grounds for relief.  The Government opposed the Motion on January 18, 2008.  On February 6, 2008, Petitioner submitted a "Memorandum in Opposition to the Government's Motion in Opposition."  In a subsequent filing [155], he asked the Court to consider the "Memorandum in Opposition" as a reply brief in response to the Government's opposition.  Petitioner's Motion is currently before the Court.

## II.  Standard of Review

Under 28 U.S.C. § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) that the sentence was imposed in violation of the Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962).  To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence.  *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

"'Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised

2

in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'''"  *United States v. Sanders*, 247 F.3d 139, 144 (4th Cir. 2001) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).

To prove that ineffective assistance of counsel violates the Sixth Amendment, a petitioner must satisfy a two-pronged test established by the Supreme Court in *Strickland v. Washington*.  466 U.S. 668, 687 (1984); *see United States v. Terry,* 366 F.3d 312, 314 (4th Cir. 2004).  Under the *Strickland* test, a petitioner must show that: (1) his counsel's representation fell short of an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland,* 466 U.S. at 687-94.  If a petitioner fails to meet either requirement, his claim for ineffective assistance of counsel cannot proceed. *Strickland*, 466 U.S. at 697.  Furthermore, if a petitioner fails to make a sufficient showing on one prong of the test, the Court is not obliged to address the other prong.  *Id.* at 700.

3

### III.  Analysis

Petitioner raises eight grounds for relief in his Motion.  He claims that: (1) the Court sentenced him in violation of the Sixth Amendment; (2) his sentence should be reduced to account for the disparity of the sentencing guidelines related to crack cocaine; (3) his Fifth Amendment due process rights were violated when his counsel elicited an incriminating statement during cross-examination; (4) he was provided ineffective assistance of counsel when his defense lawyer elicited the incriminating statement; (5) the indictment was defective; (6) he was provided ineffective assistance of counsel when his defense lawyer allowed the Government to introduce certain evidence; (7) the Government violated his Sixth Amendment right to confront the witnesses against him; and (8) the Government did not have jurisdiction to indict him.[1]

In his direct appeal to the Fourth Circuit, Petitioner raised only grounds (1) and (3) above.  It is possible, then, that Petitioner's additional claims are procedurally defaulted.

---

[1]  Petitioner appears to have contemplated raising the denial of his suppression motion as an additional ground for relief.  *See* Pet.'s Mot. at 3. He does not, however, subsequently list the issue as a ground for relief in his Motion.  Nor did he brief the issue or mention it in his subsequent filings.  Even if the Court were to consider the suppression issue again, it would not find that Petitioner was entitled to relief under § 2255. Petitioner has provided no reason for the Court to revisit the ruling that the search and seizure did not violate the Fourth Amendment.  Indeed, the Fourth Circuit explicitly upheld the Fourth Amendment ruling on appeal.  *United States v. Billingsley*, 192 Fed. Appx. 201, 203-04, 2006 WL 2044850 (4th Cir. July 20, 2006).  The stop at issue was justified, and Billingsley consented to the search of the car.  *Id.*

The Court will dispense with a procedural default analysis, however, because none of Petitioner's claims has merit.  The Court will address each ground for relief in turn.

A. Ground 1: Sentencing – 6th Amendment and *Booker*

Petitioner argues that the Court violated his Sixth Amendment rights when it imposed a sentence in violation of the Supreme Court's mandate in *United States v. Booker*, 543 U.S. 220 (2005).  He claims that the jury, rather than the judge, should have determined the drug quantity used to sentence him.  He also argues that the finding should have been made beyond a reasonable doubt rather than by a preponderance of the evidence.  Pet.'s Mem. in Supp. at 4.

Petitioner's claim misapprehends the applicable law. It remains within the purview of the trial judge to determine sentencing factors so long as the facts found do not increase the penalty beyond the statutory maximum.  *See Apprendi v. N.J.*, 530 U.S. 466, 490 (2000).  "'The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence.'"  *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005) (quoting *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005)).  The statutory maximum for the crime of which Petitioner was convicted is life imprisonment.  21 U.S.C. § 841(b)(1)(A)(iii).  Petitioner received a sentence within the statutory maximum.  Thus, it was

not improper for the Court to determine the applicable drug
quantity by a preponderance of the evidence.  Petitioner's first
claim will be denied.

    B.  <u>Ground 2: Sentencing – Modification by United States</u>
       <u>Sentencing Commission</u>

       Petitioner contends that his sentence should be
modified in compliance with the new rule on crack cocaine
sentences promulgated by the United States Sentencing Commission,
which became effective on November 1, 2007.  *See* United States
Sentencing Comm'n, Report to Congress: Cocaine and Federal
Sentencing Policy (May 2007); United States Sentencing Guidelines
Manual, Supp. to App. C, amend. 706 (2008); *see generally United
States v. Johnson,* 556 F. Supp. 2d 563, 565 (W.D. Va. 2008).

       The Fourth Circuit has held that, barring extraordinary
circumstances, a § 2255 motion is not the proper vehicle to
challenge an application of the Sentencing Guidelines.  *United
States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999).  Section
2255 provides for relief in cases in which the sentence exceeded
the maximum authorized by law.  Here, the maximum sentence
authorized by law was life imprisonment.  Rather than request
relief under § 2255, Petitioner should have moved for a sentence
reduction under 18 U.S.C. § 3582, which allows for a motion by a
"defendant sentenced to a term of imprisonment based on a
sentencing range that has subsequently been lowered by the

Sentencing Commission."  18 U.S.C. § 3582(c)(2).  Petitioner acknowledged that he should have filed his sentence reduction request pursuant to § 3582 and asked the Court to construe his § 2255 request as a § 3582 motion.

Since filing the instant Motion, however, Petitioner corrected his error by submitting a separate motion for a sentence reduction pursuant to 18 U.S.C. § 3582.  The Court denied that motion in an Order dated December 2, 2008.  As the Court has already ruled on Petitioner's motion for a sentence reduction pursuant to § 3582, it will deny his second ground for relief as moot.

C. <u>Grounds 3 and 4: Rule 16 Violation and Ineffective Assistance of Counsel</u>

1. <u>Fifth Amendment</u>

Petitioner argues that a Rule 16 violation that occurred during the trial amounted to a denial of due process under the Fifth Amendment.  Rule 16 governs, among other discovery issues, the Government's disclosure obligations.  Fed. R. Crim. P. 16(a).  Petitioner claims that the Government did not meet its discovery obligations because it failed to alert Petitioner or his counsel to an inculpatory statement that

Petitioner made to a police officer, which Petitioner's attorney elicited on cross-examination of the police officer.[2]

The Government claims that no Rule 16 violation occurred, because it did not intend to use, and did not use, the inculpatory statement at trial.  During the trial, however, the Court found that a Rule 16 violation had occurred.  It further found that the violation did not warrant a mistrial.  Instead, the Court offered a curative instruction.  After carefully considering the costs and benefits of accepting a curative instruction that would once again bring the inculpatory statement to the attention of the jury, Petitioner's counsel refused the proposed instruction.  Subsequently, the Fourth Circuit rejected Petitioner's assertion that the Court improperly denied his motion for a mistrial.  *Billingsley*, 192 Fed. Appx. at 203.

First, it does not appear that a Rule 16 violation actually occurred at trial.  Rule 16(a)(1)(A) requires the Government to disclose to a defendant "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the

---

[2]   The police officer testified that Petitioner told him that he would cooperate "if you can show me four MF'ers that will testify against me." Pet.'s Mem. in Supp. at 7; Trial Tr. at 608 (cross-examination of D. Cutting).

statement at trial."[3]  The Government did not use, and maintains
that it did not intend to use, Petitioner's statement at trial.
Instead, Petitioner's counsel accidentally elicited the statement
during cross-examination.  Indeed, from the trial transcript, it
appears that the statement was unknown to counsel for both the
Government and the defense.[4]  *See* Trial Tr. at 692-93.  As an
initial matter, then, it does not appear that a Rule 16 violation
occurred.

Second, even if such a violation did occur, Petitioner
has not shown that it fundamentally prejudiced his right to a
fair trial under the Fifth Amendment.  *See United States v.*
*Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) ("'In order to
declare a denial of [fundamental fairness] we must find that the
absence of that fairness fatally infected the trial; the acts
complained of must be of such quality as necessarily prevents a
fair trial.'" (quoting *Lisenba v. California*, 314 U.S. 219, 236
(1941))).

While the Court refused to grant a mistrial based on
the statement, it did offer Petitioner a curative instruction to

---

[3] By contrast, the Government "must disclose to the defendant . . . any
relevant written or recorded statement by the defendant" that the Government
has in its possession.  Fed. R. Crim. P. 16(a)(1)(B).  Subsection (B) does not
limit the Government's obligation based on its intent to use the statement at
trial.

[4] Additionally, even if all counsel had been aware of the statement, it
would have been admissible as a party admission; the police had read
Petitioner his *Miranda* warning before he made the statement.  *See* Trial Tr. at
692.

repair any harm that may have occurred.  The Fourth Circuit held
that the Court did not abuse its discretion in doing so.
*Billingsley*, 192 Fed. Appx. at 203.  Moreover, the evidence
against Petitioner was clear and overwhelming.  The police
officer who testified to the statement that Petitioner allegedly
made was one of eighteen Government witnesses used to prove the
elements of the conspiracy.  Taken in context, the single
additional statement attributed to Petitioner did not affect the
outcome of the trial or make it fundamentally unfair.  Finally,
nothing suggests that the Government knew or intended that the
witness would relate Petitioner's statement during cross-
examination.  A single inculpatory statement, heard only once by
the jury, and in the context of a parade of witnesses testifying
about Petitioner's unlawful activities, could not have "fatally
infected the trial."  *Lisenba*, 314 U.S. at 236.  Petitioner's
third ground for relief will be denied.

   2. <u>Ineffective Assistance</u>

    Petitioner also raises an ineffective assistance of
counsel claim based on the same alleged Rule 16 violation.  He
argues that his defense counsel acted deficiently by refusing to
accept the Court's proposed limiting instruction.

    In order to make out an ineffective assistance of
counsel claim under the Sixth Amendment, Petitioner must satisfy
the two-pronged *Strickland* test: he must show (1) that his

counsel's representation fell short of an objective standard of reasonableness; and (2) a reasonable probability that, but for the error, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-94.

Here, Petitioner fails to meet the first prong of the test. He has not shown that his defense counsel's representation fell short of an objective standard of reasonableness. Defense counsel was in no way unresponsive to the possibility that the statement at issue was prejudicial. First, defense counsel asked the Court to declare a mistrial because of the statement on several occasions. Second, defense counsel carefully weighed the pros and cons of a limiting instruction before deciding to reject it – a decision that fell well within the objective standard of reasonableness.

After the Court denied counsel's final request for a mistrial, the Court asked whether he wanted a limiting instruction that would, by necessity, put the substance of the disputed statement before the jury for a second time. Defense counsel decided, after weighing the options, that putting the statement before the jury would do more harm than a limiting instruction would do good. *See* Gov't's Opp'n at 6 (quoting J.A. at 98). Petitioner has not shown – and, given the obvious care that his counsel put into the decision, can not show – that his counsel's rejection of the limiting instruction was unreasonable.

11

Far from indicating ineffective assistance of counsel, the record makes it clear that Petitioner's counsel made a careful and thoughtful decision after weighing all of the competing concerns. Petitioner's fourth ground for relief will be denied.

 D. <u>Grounds 5 and 8: Defective Indictment</u>

  1. <u>Ground 5: Duration of Conspiracy</u>

   Petitioner argues that the Superseding Indictment was defective because it stated that the conspiracy ran from "in or about January 1998" through "in or about March 2003," while Defendant was incarcerated from September 1993 until February 2002.  Petitioner misunderstands the law of conspiracy, which does not require an individual to have taken part in each and every act that occurred during the conspiracy, so long as he joined in the conspiracy.

   To show a conspiracy, the Government must prove that: (1) two or more persons reached an agreement to participate in a criminal act; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily joined the conspiracy. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).  Here, the Government alleged each required element in the Superseding Indictment and proved each element at trial.  The Superseding Indictment correctly referred to the total length of the conspiracy rather than just the length of time during which Petitioner was involved.  The Court will deny this ground for relief.

2. <u>Ground 8: Interstate Commerce</u>

Petitioner also suggests that the Superseding Indictment was defective because it did not allege a nexus to interstate commerce.  Pet.'s Mem. in Supp. at 12.

Whether the Constitution requires the allegation of a nexus to interstate commerce in an indictment for violations of 21 U.S.C. §§ 841 and 846 is a moot point in light of the allegations in the Superseding Indictment.  The Superseding Indictment explicitly states that part of the conspiracy included the movement of drugs across state lines.  One member of the conspiracy, along with unindicted co-conspirators, acquired cocaine from a source in New York City.  Superseding Indictment at ¶ 4.  Members of the conspiracy "cooked" the cocaine in Prince George's County, Maryland, before marketing it in Virginia.  *Id.* at ¶ 5.  Thus, the Superseding Indictment alleged that Petitioner joined in a conspiracy that included the movement of illegal drugs across state lines.  Whether or not this is a requirement of 21 U.S.C. §§ 841 and 846, it was alleged in the Superseding Indictment.  Petitioner's claim to the contrary has no merit.

E. <u>Ground 6: Ineffective Assistance – Introduction of Evidence Related to Count VII</u>

Petitioner raises a second ineffective assistance claim that appears to be based on his counsel's discussion, during opening arguments, of evidence related to Count VII of the Superseding Indictment, which charged Petitioner with possession

13

of cocaine.  The Government had previously moved for the
dismissal of Count VII.  Evidence relevant to Count VII included
large amounts of cash found on Petitioner's person, cocaine found
in an automobile, and Petitioner's presence in an area known for
narcotics distribution while in the company of another individual
known to distribute narcotics.  Gov't's Opp'n at 8.

Petitioner believes that his counsel's statement about
the dismissed charge made the evidence of cocaine possession
related to that charge admissible at trial, which in turn enabled
"the government to . . . construct its case against petitioner."[5]
Pet.'s Mem. in Supp. at 10.

Nothing that Petitioner's counsel may have said about
Count VII, however, had any effect on the evidence admissible
against Petitioner.  The evidence against him was admissible
because it was relevant to Count I, on which Petitioner was
ultimately convicted.  That the evidence was *also* relevant to
Count VII – the dismissed charge – is beside the point.  The fact
that the evidence would have helped prove one charge does not bar
its introduction to help prove a different charge, so long as
there is no independent bar to admissibility.  Here, the evidence
was probative of both possession and a drug conspiracy.  Thus,
defense counsel's purported discussion of Count VII did not allow

---

[5] Petitioner also appears to believe that evidence used against him in a
state prosecution cannot be used in any subsequent federal prosecution.  *See*
Pet.'s Reply at 9.  The use of evidence by a state, however, does not immunize
it from later use by the federal government.

the Government to introduce new or additional evidence against
Petitioner.  Petitioner has not shown that his counsel's
representation fell short of an objective standard of
reasonableness.  The Court will deny his sixth ground for relief.

F. <u>Ground 7: Sixth Amendment Confrontation Clause</u>

Finally, Petitioner argues that the Government violated
his Sixth Amendment right to confront the witnesses against him
when it failed to call a Government witness to the stand.  *See*
U.S. Const. amend. VI.  He claims that the Government had planned
to call a Jonathan Lambert to the stand to corroborate the
testimony of Leslie Tucker, a co-conspirator who testified
against Petitioner.  Petitioner claims that the Government's
failure to call Mr. Lambert as a witness infringed his right to
confront adverse witnesses.

As the Government correctly notes, the Confrontation
Clause, at its core, protects a criminal defendant's right to
cross-examine adverse witnesses.  *See, e.g.*, *Maryland v. Craig*,
497 U.S. 836, 847 (1990).  Because the prosecution did not call
Mr. Lambert, Petitioner's Confrontation Clause rights were not
implicated.  Moreover, nothing stopped Petitioner from calling
Mr. Lambert to the stand as a witness for the defense.  The
Government's failure to call Mr. Lambert did not violate
Petitioner's Sixth Amendment rights.

In his Reply brief, Petitioner appears to advance a
different argument regarding Mr. Lambert.  He claims that the

15

Government lied when it stated that it did not call Mr. Lambert because his testimony would have been cumulative. Petitioner asserts that the Government intentionally withheld Mr. Lambert's testimony because it knew that the testimony would have undermined the connection between Petitioner and Mr. Tucker. That connection was purportedly based, at least in part, on a telephone call between Mr. Tucker and Mr. Lambert that discussed a potential drug transaction. *See* Pet.'s Reply at 10. Petitioner submitted an affidavit from Mr. Lambert stating that two prosecutors and a police detective knew that the telephone conversation between Mr. Lambert and Mr. Tucker did not relate to drug transactions.

Petitioner did not state in his reply brief what kind of rights violation he believes occurred. Judging by the contents of his brief, though, it appears that Petitioner is claiming that the Government committed a *Brady* violation by improperly withholding evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). Assuming that Petitioner is attempting to allege a *Brady* violation, and assuming the truth of the affidavit submitted by Petitioner, the Court finds that no *Brady* violation took place. *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation has three essential components: "(1) the evidence at issue must be favorable to the defendant, whether directly exculpatory or of impeachment value; (2) it must have been

16

suppressed by the state, whether willfully or inadvertently; and (3) it must be material." *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999) (citation omitted).

First, the Government turned over to Petitioner's defense counsel a Report of Investigation ("ROI") memorializing Lambert's statements to law enforcement officials on January 24, 2004 and February 9, 2004. The ROI includes Lambert's statement that, while he suspected Petitioner of purchasing crack cocaine, he had never witnessed it. Gov't's Supp. Resp. at 5. This disclosed statement had the same impeachment value as Lambert's affidavit. Both called into question Tucker's testimony that Lambert brokered a drug deal between Tucker and Petitioner. The "new" evidence offered by Petitioner has, at most, the same value as the evidence he received through the Government's open-file method fo document production.

Second, even assuming that Petitioner could show that the evidence was favorable to him and that the Government suppressed it, the disputed evidence was not material. Materiality requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 431-32 (1995). "Where the prosecution fails to disclose evidence favorable to the accused, such evidence is material only where there exists a reasonable probability that had the evidence been disclosed the result of

the trial would have been different." *United States v. Ellis*, 121 F.3d 908, 914 (1997) (internal quotations and citations omitted). "A reasonable probability of a different result is shown when the government's failure to disclose evidence undermines confidence in the outcome of a trial." *Id.* (internal quotations and citations omitted); *see United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Maynard v. Dixon*, 943 F.2d 407, 417 (4th Cir. 1991); *Hall v. United States*, 30 F. Supp. 2d 883, 890 (E.D. Va. 1998).

Here, the affidavit, read in a charitable light, calls into question the substance of a conversation testified to by Mr. Tucker. If the affidavit is correct, Mr. Tucker did not learn that Petitioner wished to purchase drugs from him as a result of the particular conversation to which Mr. Tucker testified at trial. While this jailhouse revelation could call into question the credibility or memory of Mr. Tucker, it does not automatically vitiate Mr. Tucker's testimony that he sold drugs to Petitioner. Nor does it undermine the connection between Mr. Tucker and Petitioner. The phone call was just one of several links between the two men. Mr. Tucker testified that he had known Petitioner for ten years or longer. Trial Tr. at 370. He also testified that Petitioner accompanied Mr. Tucker's brother on two occasions when Mr. Tucker's brother purchased drugs from Mr. Tucker. *Id.* at 372. Additionally, Mr. Tucker's brother had

18

a child with Petitioner's sister.  *Id.* at 402; *see also id.* at 610 (cross-examination of D. Cutting).  Petitioner has not called any of this evidence into question.

Thus, numerous pieces of evidence connect Mr. Tucker to Petitioner apart from the disputed phone conversation.  One non-witness's affidavit, made more than a year after the trial, that recalls a different version of a conversation concerning the fact that Petitioner was interested in purchasing drugs on a single occasion, does not rise to the level of "material," especially when numerous witnesses testified to Petitioner's extensive drug-related activities on other occasions.

Indeed, the Government's case against Petitioner did not rely solely or even primarily on Mr. Tucker's testimony.  Eighteen witnesses for the prosecution testified about various elements of the conspiracy.  The Government presented a multitude of witnesses who testified about Petitioner's drug dealing.  There is simply no "reasonable probability" that disclosure of the evidence disputed by Petitioner would have changed the outcome of the trial.  The evidence of Petitioner's guilt was overwhelming; the affidavit of Mr. Lambert does not undermine confidence in the result of the trial.  Petitioner's seventh ground for relief will be denied.

For the same reasons, any claim[6] that Petitioner's counsel provided ineffective assistance by choosing not to use Mr. Lambert's ineffectual affidavit on direct appeal has no merit.[7]

When reviewing the performance of a petitioner's counsel on appeal, the court "must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief on appeal.'" *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2001) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)).  "The Sixth Amendment does not require appellate counsel to raise every nonfrivolous issue on appeal. The Supreme Court has recognized the importance of 'having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" *McNeill v. Polk*, 2005 WL 5153834, at *19 (E.D.N.C. Mar. 21, 2005) (quoting *Jones v. Barnes*, 463 U.S. 745, 752 (1983)).

---

[6]  While Petitioner did not raise this contention as a third ground for ineffective assistance, he did mention the issue on page 12 of his reply brief.

[7]  Had Petitioner's attorney decided to use the purportedly new evidence contained in the Lambert affidavit, he probably would have done so in a motion for a new trial under Federal Rule of Criminal Procedure 33.  Among other requirements for granting a motion for a new trial under Rule 33, a court must decide that "the newly discovered evidence would probably produce an acquittal." *United States v. Fulcher*, 250 F.3d 244, 250 (4th Cir. 2001) (quoting *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1989)).  For the reasons stated above, the Lambert affidavit would not have justified a new trial because it would not "probably produce an acquittal." *Id.*  It was not ineffective assistance to fail to raise such an ineffectual argument.  In this situation, such inaction would meet neither *Strickland* requirement.

Here, Petitioner's counsel's decision not to use the Lambert affidavit on appeal – if indeed that is what happened – was well within the bounds of an objective standard of reasonableness.  For the reasons stated above, the Lambert affidavit would not have provided sufficient justification for a new trial or for overturning Petitioner's conviction on appeal. Counsel was not ineffective for concentrating on more promising grounds, such as they were.

### IV. Conclusion

For the foregoing reasons, Petitioner's Motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be denied.

An appropriate Order will issue.


April 29, 2009                          /s/
Alexandria, Virginia              James C. Cacheris
                        UNITED STATES DISTRICT COURT JUDGE

21